```
USDC-SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC#:
DATE FILED:
```

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

PRIYA HARRIRAM,

                         Plaintiff,

v.

JOSEPH LUIS FERA, LEHMAN COLLEGE, and CITY UNIVERSITY OF NEW YORK,

                         Defendants.

No. 21-CV-3696 (RA)

MEMORANDUM
OPINION & ORDER

RONNIE ABRAMS, United States District Judge:

    Plaintiff Priya Harriram brings this pro se action against Defendants Joseph Luis Fera, Lehman College,[1] and the City University of New York ("CUNY") for violations of 42 U.S.C. § 1981, Title IX, Title VII, and the New York City Human Rights Law ("NYCHRL"). Defendants now move to dismiss the Second Amended Complaint pursuant to Federal Rules of Civil Procedure 12(b)(1) and (b)(6). For the reasons that follow, Defendants' motion is granted, albeit without prejudice.

## BACKGROUND

    The following facts are drawn primarily from Plaintiff's Second Amended Complaint which, on a motion to dismiss, the Court must assume to be true.[2] *See Lynch v. United States*, 952 F.3d 67, 74-75 (2d Cir. 2020). They are based as well on Plaintiff's opposition to the motion to

---

[1] Although Plaintiff names both Lehman College and CUNY as defendants, "Lehman College is a senior college within CUNY and has no separate legal existence." *Ross v. State of New York*, 2016 WL 626561, at *3 (S.D.N.Y. Feb. 16, 2016) (citing *Clissuras v. City Univ. of New York*, 359 F.3d 79, 81 n.2 (2d Cir. 2004)). The claims against Lehman College are thus dismissed.

[2] As Defendants point out, although the operative complaint is labeled "(3rd) Amended Complaint" on the docket, ECF No. 56, this is actually Plaintiff's Second Amended Complaint, because the amended complaint that she attempted to file on October 19, 2021, ECF No. 28, was never considered operative. *See* ECF No. 31, 34. The Court will thus refer to the operative complaint as the "Second Amended Complaint."

dismiss, as courts are "permitt[ed] . . . to consider facts alleged for the first time in a *pro se* plaintiff's opposition to a motion to dismiss," which "must be construed liberally and interpreted to raise the strongest arguments they suggest," *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2016); *see also Gill v. Mooney*, 824 F.2d 192, 195 (2d Cir. 1987) (considering the allegations in a *pro se* plaintiff's opposition to a motion to dismiss, in addition to the allegations in his complaint).

Plaintiff self-identifies as a "West Indian/Caribbean" and Trinidadian woman. Second Am. Compl. at 3, 5. She has a Bachelor's degree in Mathematics and a Master's degree in Math Education, "with teaching experience in College." *Id.*, Attachment at 3; Opp. at 2. Plaintiff alleges that she has "been a part of CUNY for at least 14 years in the capacity of working, taking courses, or both," Opp. at 3, although she does not specify when she was a student and when she was an employee in that fourteen-year time frame.

The primary allegations that the Court can glean from the Second Amended Complaint center on the three times Plaintiff applied for a math adjunct lecturer position at Lehman College, in February, March, and April of 2020. As noted, however, Plaintiff does not specify whether she was a student at CUNY, an employee at CUNY, or unaffiliated with the school during this time period. In February 2020, Plaintiff alleges that she approached Defendant Fera—whose title Plaintiff does not specify—in his office and gave him a copy of her resume. According to Plaintiff, they then had the following colloquy: Plaintiff announced that she was "applying for the Math Adjunct position," to which Fera responded, "I was having a better day until you came, why don't you just go somewhere else, why do you keep coming to Lehman?" Second Am. Compl., Attachment at 1. Plaintiff then said, "Mr. Gants said to hand in my resume to you and he wants applicants with a Masters, so why is Rafael hired?" *Id.* Fera allegedly responded, "I don't even

know why I am talking to you! Remember I am the Math Department." *Id.* Twice in the next two months, on March 3, 2020 and April 14, 2020, she allegedly emailed her resume to Fera and asked about the status of her application. *Id.* at 2. Fera did not respond to either email. *Id.*

Plaintiff identifies four men—Rafael Gonzalez, Christopher Bowman, Eduardo Ovadiah, and Jonathan Hernandez—who she claims were hired for the math adjunct position despite having inferior credentials to her. *Id.*; *see also* Opp. at 2. According to Plaintiff, Bowman is African American, and the other three individuals are Dominican. Gonzalez "has a Bachelors and no Masters with no experience in teaching"; Ovadiah "has a Bachelors with no Masters and his first job in Lehman was a Math tutor, prior to that he has no teaching experience in a College setting"; and Hernandez has "a Bachelor's degree while working on a Master's degree." Second Am. Compl., Attachment at 2-3. Plaintiff makes no allegations about Bowman's credentials.

According to Plaintiff, two of these individuals—she does not specify who—told her, "all [you] have to do is just ask the defendant and he will give [you] the job because it's a form of discrimination if he doesn't give it to you." *Id.* at 3. She also alleges that individuals named David Gants, Walter Valerio, and Steve Wycoff told her that she "had the credentials" and must apply for the position through Fera, who "is the only one who hires for their math programs." *Id.* Gants allegedly said, "you have the credentials and teaching experience I'm sure Joe will hire you just give him your resume or email him." *Id.* Plaintiff does not specify when any of these comments were made.

Plaintiff also alleges that she was "forced against [her] will several times to perform oral sex to Fera," and that he "retaliated against me" because "he could not handle rejections from me." Opp. at 2, 4. She does not indicate when these purported incidents occurred. Plaintiff claims that Fera's "sexual advances" included "fondling and grabbing my hand or staring at my breasts

throughout the years of going to school and working at Lehman College." Opp. at 2. She further asserts that when she "told him to stop touching my hand[,] he said something is wrong with me." *Id.* at 4. She does not plead any other specifics about these alleged incidents. According to Plaintiff, she reported this sexual misconduct to "a case worker, Jose Rodriguez," as well as "three employees of Lehman College": "the defendant's boss, Nicolas Hanges"; "a secretary for the Math Department, Myrsa Bonilla whom did not want to get involved"; and "my co-worker who did not want to help me, Stephen Castellano." Second Am. Compl., Attachment at 4. She does not specify when she allegedly made these reports.

    In her opposition to the motion to dismiss, Plaintiff makes additional allegations regarding events that purportedly took place in October and November 2021. She appears to indicate that she was employed at Lehman College at this time, but does not specify what position she held. In particular, she alleges that, in October 2021, she "made two formal sex abuse complaints to CUNY about the two Math Professors at Lehman College, one of them being the defendant in question." Opp. at 2, 5. On October 12, 2021, Plaintiff was interviewed by a Title IX Coordinator, Dawn Ewing Morgan. *Id.* at 6. The day after her Title IX interview, on October 13, 2021, CUNY allegedly "eliminated [Plaintiff's] primary job function by disabling the database (ADManagerPlus) which is used to reset passwords." Opp. at 5. In addition, Plaintiff asserts that "[f]rom October 13, 2021 till my termination, November 8, 2021, I was harassed by Public Safety when entering the premises to attend work." *Id.* She "filed a Whistleblower Complaint" on November 1, 2021, and was allegedly terminated on November 8, 2021. *Id.* She also alleges that, due to her termination, she "lost [her] Educational Tuition Reimbursement Benefit from DC 37" and is "blocked from accessing [her] free Lehman College Alumni Email." Opp. at 11.

4

On November 19, 2020, Plaintiff filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") alleging discrimination based on her sex and national origin. Second Am. Compl. at 9. The EEOC dismissed her complaint on March 12, 2021. *See id.* at 10.

Plaintiff filed this federal action on April 26, 2021. After Defendants moved to dismiss the original complaint, Plaintiff filed a First Amended Complaint on November 2, 2021, which Defendants again moved to dismiss. Once Defendants' second motion to dismiss was fully briefed, Plaintiff successfully sought to amend her pleadings again. Plaintiff filed the operative complaint—the Second Amended Complaint—on March 8, 2022. Plaintiff alleges violations of 42 U.S.C. § 1981, Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.*, the New York City Human Rights Law ("NYCHRL"), N.Y.C. Admin. Code § 8-101, *et seq.*, and Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681, *et seq.* Defendants now move to dismiss the Second Amended Complaint for lack of subject matter jurisdiction and failure to state a claim.

## LEGAL STANDARD

"To survive a motion to dismiss [under Rule 12(b)(6)], a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). The Court must accept as true all factual allegations and draw all reasonable inferences in Plaintiffs' favor, *Goldstein v. Pataki*, 516 F.3d 50, 56 (2d Cir. 2008), but it need not credit "mere conclusory statements," *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need

5

detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (internal citations and alterations omitted). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but not 'shown'—'that the pleader is entitled to relief,'" and the complaint must be dismissed. *Iqbal*, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)(2)).

"A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000). "A plaintiff asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that it exists." *Id.*

## DISCUSSION

### I. Title VII

Liberally construed, the Second Amended Complaint alleges claims of discrimination, retaliation, and hostile work environment under Title VII. The Court will address each in turn.

#### A. Discrimination

Title VII discrimination claims are analyzed pursuant to the familiar *McDonnell Douglas* burden-shifting framework. *See Reddy v. Salvation Army*, 591 F. Supp. 2d 406, 421-22 (S.D.N.Y. 2008). "Under this framework, at the summary judgment stage, a plaintiff must first demonstrate a prima facie case of employment discrimination by showing that: '(1) she was within the protected class; (2) she was qualified for the position; (3) she was subject to an adverse employment action; and (4) the adverse action occurred under circumstances giving rise to an inference of discrimination.'" *Farmer v. Shake Shack Enterprises, LLC*, 473 F. Supp. 3d 309, 324 (S.D.N.Y. 2020) (quoting *Menaker v. Hofstra Univ.*, 935 F.3d 20, 30 (2d Cir. 2019)). "The burden of

production then shifts to the defendant to offer a legitimate, non-discriminatory reason for the allegedly discriminatory conduct." *Id.* (citing *Littlejohn v. City of New York*, 795 F.3d 297, 307 (2d Cir. 2015)). "Upon such a showing, the plaintiff must demonstrate that the reasons offered by the defendant are a mere pretext for discrimination." *Id.* (citing *Littlejohn*, 795 F.3d at 307-08).

At the motion-to-dismiss stage, however, "a plaintiff is not required to plead a prima facie case under *McDonnell Douglas*." *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 84 (2d Cir. 2015). Rather, "a plaintiff 'need only give plausible support to a minimal inference of discriminatory motivation'" for the case to move forward. *Id.* (quoting *Littlejohn*, 795 F.3d at 306). "A plaintiff can meet that burden through direct evidence of intent to discriminate, or by indirectly showing circumstances giving rise to an inference of discrimination." *Id.* at 87 (internal citation omitted).

Plaintiff's discrimination claim is based on two discernible theories: failure-to-hire and quid pro quo sexual harassment. "To plead a failure-to-hire claim under Title VII . . . the plaintiff must demonstrate that: (1) the plaintiff is a member of a protected class; (2) the plaintiff applied and was qualified for a job for which the employer was seeking applicants; (3) the plaintiff was rejected despite being qualified; and (4) after this rejection, the position remained open and the employer continued to seek applicants with the plaintiff's qualifications." *Harris v. Oscar De La Renta, LLC*, 2022 WL 16963480, at *4 (S.D.N.Y. Nov. 16, 2022) (citing *Aulicino v. N.Y.C. Dep't of Homeless Servs.*, 580 F.3d 73, 80 (2d Cir. 2009)). Plaintiff makes no allegation that after she was rejected for the math adjunct position, "the position remained open and the employer continued to seek applicants with [Plaintiff's] qualifications." *Id.* Rather, Plaintiff identifies four men—Gonzalez, Bowman, Ovadiah, and Hernandez—who were purportedly hired for the math adjunct position despite being less qualified than her, but she does not identify when they were

hired (other than the indirect assertion that Gonzalez was hired before she even applied).[3]   This is reason alone to dismiss Plaintiff's failure-to-hire theory.  *See Quarless v. Bronx Lebanon Hosp. Ctr.*, 75 F. App'x 846, 848 (2d Cir. 2003) (affirming dismissal of a Title VII discrimination claim where "plaintiff had failed to allege that the position plaintiff sought was one that remained open and for which the hospital continued to seek applicants").

"To state a quid pro quo claim, [the plaintiff] must show a 'tangible employment action,' i.e., that an 'explicit alteration in the terms or conditions of employment' resulted from her refusal to submit to [the defendant's] sexual advances." *Schiano v. Quality Payroll Sys., Inc.*, 445 F.3d 597, 603 (2d Cir. 2006).  To raise an inference of discrimination, a quid pro quo harassment claim must establish a "causal connection" between the sexual advances and the employment action, either through a direct link or indirectly through temporal proximity.  *Cook v. N.Y.C. Dep't of Educ.*, 90 F. App'x 562, 563 (2d Cir. 2004).  Plaintiff's allegations of sexual abuse are undoubtedly serious.  But Plaintiff fails to plausibly plead a causal connection here.  She alleges, in conclusory and opaque fashion, that "[b]ecause Fera can't handle rejections he used his authority to override any rational decision making," and that he "exercised his abusive authority by denying [her] Equal Employment Opportunity for the Math Adjunct position."  Conclusory statements, however, are not entitled to the presumption of truth and cannot defeat a motion to dismiss.  *See Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555).  Plaintiff also alleges that when she "told [Fera] to stop touching [her] hand . . . he said something is wrong with [her]."  Second Am. Compl., Attachment at 4.  But, as mentioned above, Plaintiff does not specify when this interaction took place, nor does she provide any further factual allegations that could plausibly connect Fera's comment to his

---

[3] Plaintiff alleges that when she first applied in February 2020, she said to Fera, "Mr. Gants said to hand in my resume to you and he wants applicants with a Masters, so why is Rafael hired?"  Second Am. Compl., Attachment at 1.

decision not to hire her.  *See, e.g.*, *Copantitla v. Fiskardo Estiatorio, Inc.*, 788 F. Supp. 2d 253, 298-99 (S.D.N.Y. 2011) (dismissing a quid pro quo harassment claim where the plaintiff "does not ground any of [the defendant's] allegedly harassing behavior in a specific time period, so the Court can draw no reasonable inference as to the temporal proximity of that behavior to [the plaintiff's] alleged firing").

Plaintiff otherwise fails to plead any facts that plausibly give rise to an inference of discrimination.  The Court cannot infer discriminatory intent from Fera's facially neutral statements ("I was having a better day until you came, why don't you just go somewhere else, why do you keep coming to Lehman?" and "I don't even know why I am talking to you!  Remember that I am the Math Department"), or from the fact that Fera purportedly did not respond to two of her emails.  *See Williams v. Victoria's Secret*, 2017 WL 384787, at *8 (S.D.N.Y. Jan. 27, 2017) (quoting *Opoku v. Brega*, 2016 WL 5720807, at *8 (S.D.N.Y. Sept. 30, 2016)) (dismissing a Title VII discrimination claim where the plaintiff did not "provide any allegations that would justify an inference that certain facially neutral comments . . . were actually related to [her] protected characteristics.").

Plaintiff also alleges that several other individuals at Lehman College told her she "ha[s] the credentials and teaching experience" for the job, and that if she doesn't get the job, "it's a form of discrimination."  Second Am. Compl., Attachment at 3.  But these stray comments made by non-decisionmakers do not plausibly suggest that Fera—who Plaintiff alleges was the "only one who hires for [Lehman College's] math programs"—acted with discriminatory animus.  *See Buckner v. County of Sullivan*, 2015 WL 437408, at *5 (quoting *De Santis v. City of New York*, 2011 WL 4005331, at *10 (S.D.N.Y. Aug. 29, 2011)) ("These stray remarks are not attributed to . . . named defendants, but to individuals who played no role in the decision, and are therefore

9

plainly insufficient to demonstrate discriminatory animus."); *Holowecki v. Federal Exp. Corp.*, 644 F. Supp. 2d 338, 358 (S.D.N.Y. 2009) (quoting *Ezold v. Wolf, Block, Schorr & Solis-Cohen*, 983 F.2d 509, 545 (3d Cir. 1992)) (observing that "[s]tray remarks by non-decisionmakers or by decisionmakers unrelated to the decision process are rarely given weight," and dismissing the discrimination claim where "the record is devoid of any evidence of any other words, actions, or circumstances giving rise to an inference of . . . discrimination").

Plaintiff's Title VII discrimination claim is thus dismissed without prejudice.

**B. Retaliation**

"For a retaliation claim to survive a motion to dismiss, 'the plaintiff must plausibly allege that: (1) defendants discriminated—or took an adverse employment action—against her, (2) because she has opposed any unlawful employment practice.'" *McHenry v. Fox New Network, LLC*, 510 F. Supp. 3d 51, 67 (S.D.N.Y. 2020) (quoting *Duplan v. City of New York*, 888 F.3d 612, 625 (2d Cir. 2018)).

Defendants argue that Plaintiff's Title VII retaliation claim must be dismissed because she failed to exhaust administrative remedies.[4] The Court agrees. "As a precondition to filing a Title VII claim in federal court, a plaintiff must first pursue available administrative remedies and file a timely complaint with the EEOC." *Hardaway v. Hartford Public Works Dep't*, 879 F.3d 486, 489 (2d Cir. 2018) (internal quotation marks omitted). "The purpose of this exhaustion requirement is to give the administrative agency the opportunity to investigate, mediate, and take

---

[4] Although "the burden of pleading and proving Title VII exhaustion lies with defendants and operates as an affirmative defense," *Hardaway v. Hartford Public Works Dep't*, 879 F.3d 486, 491 (2d Cir. 2018), and although "affirmative defenses are most typically asserted in an answer, they may be raised on a motion to dismiss . . . where the complaint itself establishes the circumstances required as a predicate to finding that the affirmative defense applies," *Syeed v. Bloomberg L.P.*, 568 F. Supp. 3d 314, 321 n.6 (S.D.N.Y. 2021). Here, Plaintiff's failure to exhaust her remedies before the EEOC is clear from the face of her complaint and the attached documents. The Court will thus consider Defendants' exhaustion defense in resolving this motion to dismiss. *See id.*

remedial action." *Fowlkes v. Ironworkers Local 40*, 790 F.3d 378, 384 (2d Cir. 2015) (quoting *Brown v. Coach Stores, Inc.*, 163 F.3d 706, 712 (2d Cir. 1998)). "That purpose 'would be defeated if a complainant could litigate a claim not previously presented to and investigated by the EEOC." *Syeed v. Bloomberg L.P.*, 568 F. Supp. 3d 314, 321 (S.D.N.Y. 2021) (quoting *Miller v. Int'l Tel. & Tel. Corp.*, 755 F.2d 20, 26 (2d Cir. 1985)). "An allegation not set forth in an administrative charge will be barred as unexhausted unless it is reasonably related to the allegations in the charge." *Hoffman v. Williamsville Sch. Dist.*, 443 F. App'x 647, 649 (2d Cir. 2011). Because "retaliation claims 'represent an entirely distinct theory of liability" from discrimination claims, they "cannot be viewed as 'reasonably related' unless they are specifically included in an EEOC charge." *Zito v. Fried, Frank, Harris, Shriver & Jacobson, LLP*, 869 F. Supp. 2d 378, 392 (S.D.N.Y. 2012) (internal quotation marks omitted).

Plaintiff's Charge of Discrimination filed with the EEOC does not contain any allegation of retaliation. In her EEOC complaint, she alleges that her "numerous applications to be to become [sic] a Math adjunct lecturer" were "denied based on my Trinidadian national origin and sex (gender-female)," that her application was "rejected off hand by Mr. Fera," and that she "believe[s] based on my national origin and sex I have been denied employment in violation of Federal, State and Local laws." Second Am. Compl. at 9. Beyond these allegations of discrimination, however, the EEOC complaint does not assert that Plaintiff ever opposed any unlawful employment practice, or that retaliatory actions were taken against her. *See, e.g.*, *Moguel v. Covenant House/New York*, 2004 WL 2181084, at *8 (S.D.N.Y. Sept. 29, 2004) (collecting cases dismissing Title VII retaliation claims for failure to exhaust administrative remedies where the EEOC complaint did not include any allegation of retaliation, only discrimination). And while the EEOC complaint was filed in November 2020—before Plaintiff's Title IX interview in October 2021 and the

11

allegedly retaliatory acts that occurred thereafter—she does not allege that she filed another EEOC complaint regarding the subsequent purported retaliation.

Because Plaintiff failed to exhaust her administrative remedies, her Title VII retaliation claim is dismissed with prejudice.

### C. Hostile Work Environment

"To establish a hostile work environment under Title VII, . . . a plaintiff must show that 'the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.'" *Littlejohn v. City of New York*, 795 F.3d 297, 320-21 (2d Cir. 2015) (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993)). "This standard has both objective and subjective components: the conduct complained of must be severe or pervasive enough that a reasonable person would find it hostile or abusive, and the victim must subjectively perceive the work environment to be abusive." *Raspardo v. Carlone*, 770 F.3d 97, 114 (2d Cir. 2014). "A hostile work environment 'is actionable . . . only when it occurs because of an employee's sex, or other protected characteristic." *Bliss v. MXK Restaurant Corp.*, 220 F. Supp. 3d 419, 423 (S.D.N.Y. 2016) (quoting *Brown v. Henderson*, 257 F.3d 246, 252 (2d Cir. 2001)).

Plaintiff's allegations regarding her applications for the math adjunct position in February, March, and April 2020 cannot establish a claim for a hostile work environment, because she does not allege that she was employed at Lehman College at the time. Her allegations regarding Fera's alleged sexual misconduct similarly do not establish a hostile work environment claim, because Plaintiff does not specify whether she was employed at Lehman College when those incidents occurred, or even when those incidents took place.

Plaintiff's allegations regarding the events of October and November 2021 also fail to state a claim, because they do not reflect conduct that is "severe or pervasive enough" to meet the hostile work environment standard. Losing access to the ADManagerPlus database, which Plaintiff "used to reset passwords," Opp. at 3, appears to be a "petty slight" or "trivial inconvenience," neither of which is actionable. *See Alexander v. Possible Prods., Inc.*, 336 F. Supp. 3d 187, 195 (S.D.N.Y. 2018). Although Plaintiff alleges that "CUNY eliminated my primary job function" by disabling her access to this database, she does not explain what her "primary job function" was; how the database related to her job; or even what position she held at the time. She further does not allege that she lost access to the database "because of" a protected characteristic. Without specific allegations demonstrating that "the workplace [was] permeated with discriminatory intimidation, ridicule, and insult" that was objectively "severe and pervasive," *Littlejohn*, 795 F.3d at 320-21, Plaintiff's naked assertion that CUNY "eliminat[ed] [her] key job function" does not plausibly allege a hostile work environment. Plaintiff's conclusory allegation that Public Safety "harassed" her when she entered campus is similarly insufficient. Opp. at 3. She does not specify what this harassment entailed, nor does she plausibly allege that it occurred because of a protected characteristic.

Plaintiff's Title VII hostile work environment claim is thus dismissed, but without prejudice.

## II.    42 U.S.C. § 1981

Defendants next argue that Plaintiff's claims under 42 U.S.C. § 1981 are barred by sovereign immunity. "Unless a State has waived its Eleventh Amendment immunity or Congress has overridden it . . . a State cannot be sued directly in its own name regardless of the relief sought." *Kentucky v. Graham*, 473 U.S. 159, 167 n.14 (1985). Congress did not abrogate states' sovereign

immunity for 42 U.S.C. § 1981, nor has New York waived immunity for those claims. *Dimps v. Taconic Correctional Facility*, 802 F. App'x 601, 603 (2d Cir. 2020). And the Second Circuit has held that CUNY is considered an "arm of the state," which means that "suits against CUNY are equivalent to suits against the State of New York and are therefore barred by the Eleventh Amendment" where applicable. *Clissuras v. City Univ. of New York*, 359 F.3d 79, 83 (2d Cir. 2004). Moreover, no private cause of action exists against state actors under § 1981. *See Duplan v. City of New York*, 888 F.3d 612, 621 (2d Cir. 2018) (quoting *Jett v. Dallas Independent Sch. Dist.*, 491 U.S. 701, 733 (1989)) (observing that "the express cause of action for damages created by [42 U.S.C.] § 1983 constitutes the exclusive federal remedy for violation of the rights guaranteed in § 1981 by state governmental units," and "§ 1981 does not provide a separate private right of action against state actors"). Plaintiff's § 1981 claim against CUNY is thus dismissed with prejudice.[5]

The Eleventh Amendment also bars suits for monetary damages against state officials acting in their official capacity, *Tekkno Laboratories, Inc. v. Perales*, 933 F.2d 1093, 1097 (2d Cir. 1991), although not for state officials who are sued in their individual capacity, *Chinn v. City Univ. of New York Sch. of L. at Queens Coll.*, 963 F. Supp. 218, 225 (E.D.N.Y. 1997). Plaintiff does not specify whether she is suing Fera in his official capacity or individual capacity. The Second Circuit has cautioned that "the failure of a complaint to specify that claims against government officials are asserted against them in their individual capacities generally does not warrant an outright dismissal at the pleading stage, for in many cases, a complaint against public officials will not clearly specify whether officials are sued personally, in their official capacity, or both, and only

---

[5] To the extent Plaintiff's § 1981 claim against CUNY can be construed as brought under § 1983, it would still be barred by sovereign immunity. *See Clissuras*, 359 F.3d at 80-83.

the course of proceedings . . . will indicate the nature of the liability to be imposed." *Ying Jing Gan v. City of New York*, 996 F.2d 522, 529-30 (2d Cir. 1993) (internal quotation marks omitted).

Construing Plaintiff's § 1981 claim as brought against Fera in his individual capacity, however, the Court concludes that Plaintiff fails to state a claim. "To establish a claim under § 1981, a plaintiff must allege facts in support of the following elements: (1) the plaintiff is a member of a racial minority; (2) defendants' intention to discriminate on the basis of race; and (3) the discrimination concerned one of the activities enumerated in the statute, such as the right to enforce a contract, sue and be sued, give evidence, etc." *Robledo v. Bond No. 9*, 965 F. Supp. 2d 470, 475 (S.D.N.Y. 2013) (citing *Brown v. City of Oneonta*, 221 F.3d 329, 339 (2d Cir. 2000)). "The same elements constitute a claim for employment discrimination under 42 U.S.C. § 1981 as constitute a claim under Title VII." *White v. Eastman Kodak Co.*, 368 F. App'x 200, 202 (2d Cir. 2010). For the same reasons discussed above regarding Plaintiff's Title VII claim, Plaintiff similarly fails to plead a claim of intentional discrimination under § 1981.

Plaintiff's § 1981 claim against Fera is therefore dismissed, again without prejudice, assuming she is bringing the claim against him in his individual capacity.

### III.    NYCHRL

Defendants argue that Plaintiff's NYCHRL claims are also barred by sovereign immunity. "The City of New York does not have the power to abrogate the immunity of the State," and the Second Circuit "ha[s] found no evidence that [New York] State has consented to suit in federal court under the NYCHRL." *Feingold v. New York*, 366 F.3d 138, 149 (2d Cir. 2004). Therefore, Plaintiff's NYCHRL claim is dismissed against CUNY with prejudice, as well as against Fera in his official capacity.

15

As discussed above, however, sovereign immunity would not bar a claim against Fera in his individual capacity. Again construing the claim as such, Plaintiff nonetheless fails to state a claim under the NYCHRL. "[C]laims of employment discrimination under the NYCHRL are analyzed under the same *McDonnell Douglas* framework applicable to Title VII, Section 1983, and NYSHRL claims." *Bermudez v. City of New York*, 783 F. Supp. 2d 560, 577 (S.D.N.Y. 2011). The pleading standard under the NYCHRL is more liberal than Title VII, as "a plaintiff need allege only that discrimination was a motivating factor for the adverse employment action." *White v. Bridge Inc.*, 2019 WL 4805896, at *5 (S.D.N.Y. Sept. 30, 2019). But "[e]ven under the more liberal NYCHRL, a plaintiff must allege facts giving rise to an inference of discrimination based on [a protected characteristic] to prevail." *Moore v. Verizon*, 2016 WL 825001, at *8 (S.D.N.Y. Feb. 5, 2016) (citing *Gorzynski v. Jet Blue Airways Corp.*, 596 F.3d 93, 107 (2d Cir. 2010)). For the reasons discussed in the Court's analysis of Plaintiff's Title VII claim, Plaintiff fails to raise a minimal inference of discrimination based on a protected characteristic. Her NYCHRL discrimination claim against Fera thus fails.

With respect to a hostile work environment claim under the NYCHRL, "a plaintiff must show [she] was treated 'less well than other employees' on the basis of a protected characteristic." *Syeed*, 568 F. Supp. 3d at 321 (quoting *Alvarado v. Nordstrom, Inc.*, 685 F. App'x 4, 8 (2d Cir. 2017)). Plaintiff does not allege, however, that Fera had anything to do with the alleged mistreatment she experienced in October and November 2021, when she was allegedly employed at Lehman College. Her NYCHRL hostile work environment claim thus fails as well.

Plaintiff's retaliation claim must be dismissed for the same reason. "To establish a prima facie case of retaliation under the NYCHRL, a plaintiff must show that: (1) [she] participated in a protected activity; (2) the defendant knew about [her] participation; (3) the defendant took an

16

employment action that disadvantaged the plaintiff in any manner; and (4) a causal connection existed between the protected activity and the negative employment action." *Fattoruso v. Hilton Grand Vacations Co., LLC*, 525 F. App'x 26, 27 (2d Cir. 2013) (emphasis omitted). Complaints about sexual harassment or sexual misconduct qualify as protected activity under the NYCHRL. *See, e.g.*, *McHenry v. Fox News Network, LLC*, 510 F. Supp. 3d 51, 71 (S.D.N.Y. 2020); *Knight v. City of New York*, 303 F. Supp. 2d 485, 496 (S.D.N.Y. 2004).

Plaintiff plausibly alleges two instances of protected activity: (1) when she reported Fera's alleged sexual misconduct "to a case worker, Jose Rodriguez," and "three employees of Lehman College," including "defendant's boss, Nicolas Hanges," Second Am. Compl., Attachment at 4; and (2) when she made two formal Title IX complaints in October 2021. Plaintiff does not allege, however, that Fera himself was aware of any of these complaints. With respect to her complaints "to a case worker" and to "defendant's boss, Nicolas Hanges," she does not allege when she made these complaints, whether she was employed at Lehman College at the time, or what responses she received, if any. She also does not allege that Fera was involved in the decision to terminate her employment on November 8, 2021; Public Safety's alleged harassment of her; or the decision to disable her access to the ADManagerPlus database. Thus, because Plaintiff does not plausibly allege that Fera was involved in the alleged retaliation she experienced after her reports of sexual misconduct, her NYCHRL retaliation claim against Fera fails.[6]

---

[6] Plaintiff does allege that Fera "retaliated against [her] by not providing Equal Employment Opportunity for the Math Adjunct position at Lehman College since [she] was forced to perform oral sex against [her] consent several times with the defendant." Compl., Attachment at 1; *see also* Opp. at 4 ("Fera decided to retaliate against me by denying me Equal Employment Opportnity."). Retaliation claims, however, do not focus on the underlying misconduct, but rather a plaintiff's *reports or complaints* of such misconduct, which is considered "protected activity." *See Mayers v. Emigrant Bancorp, Inc.*, 796 F. Supp. 2d 434, 448 (S.D.N.Y. 2011) ("An employee engages in a protected activity when she complains of an employment practice that she reasonably believes violates the law.").

17

Plaintiff's NYCHRL claim against Fera is therefore dismissed, again without prejudice, assuming she is bringing the claim against him in his individual capacity.

## IV. Title IX

Defendants argue that Plaintiff's Title IX claims are time-barred. The Court disagrees. The statute of limitations for Title IX claims brought in New York is three years. *Curto v. Edmundson*, 392 F.3d 502, 504 (2d Cir. 2004). Defendants rely on an exhibit attached to Plaintiff's First Amended Complaint, in which Dawn Ewing Morgan, the Title IX Coordinator at Lehman College, writes to Plaintiff on October 5, 2021: "I understand that you sent a letter to the CUNY Central office describing several incidents of sexual misconduct that occurred when you were a student." First Am. Compl. at 14. Defendants also point to Plaintiff's resume, attached as an exhibit to Plaintiff's original Complaint, indicating that Plaintiff received her Bachelor's degree in 2010 and her Master's Degree in 2015, both from Lehman College. Compl. at 52. Thus, Defendants argue, the last plausible instance of sexual misconduct must have occurred in 2015.

But the fact that Plaintiff allegedly experienced sexual abuse when she was a student does not preclude the possibility that she experienced further sexual misconduct later on, when she was no longer a student. Indeed, Plaintiff alleges that "[f]rom 2013-2020, Fera would stare at my breasts and when I was sitting in his office he would fondle my hand without my permission." Opp. at 4. Although this allegation is vague—Plaintiff does not clarify whether she was a student or employee during this time frame, approximately how many times she was subjected to sexual misconduct, or when the last instance of such misconduct occurred—the Court concludes that it is sufficient to establish, at this stage, the timeliness of Plaintiff's Title IX claim. *See Triestman v. Federal Bureau of Prisons*, 470 F.3d 471, 475 (2d Cir. 2006) ("It is well established that the

submissions of a pro se litigant must be construed liberally and interpreted to raise the strongest arguments that they suggest.").

Plaintiff's Title IX claim must still be dismissed, however, because she fails to state a claim. Sex-discrimination claims under Title IX are also analyzed under the *McDonnell Douglas* framework. *Vengalattore v. Cornell Univ.*, 36 F.4th 87, 103 (2d Cir. 2022). "[I]n order to survive a Rule 12(b)(6) motion to dismiss a claim under Title IX, a complaint showing that the plaintiff was within the protected class, was qualified for the position, and was subjected to an adverse action, need only 'allege facts giving rise to a plausible minimal inference of bias' on the basis of sex." *Id.* (internal quotation marks omitted). The "standard for pleading discriminatory intent" under Title IX is the same as under Title VII. *Id.* at 104; *see also Papelino v. Albany Coll. of Pharmacy of Union Univ.*, 633 F.3d 81, 89 (2d Cir. 2011) ("[A] Title IX sex discrimination claim requires the same kind of proof required in a Title VII sex discrimination claim."). As discussed above in the Court's analysis of Plaintiff's Title VII claim, Plaintiff does not plausibly raise an inference of discrimination on the basis of any protected characteristic, including sex.

Plaintiff's Title IX claim is thus dismissed without prejudice.

## CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss is granted. Given Plaintiff's pro se status, she shall have one more opportunity to amend the Complaint within thirty days, with the exception of her § 1981 claim against CUNY, her NYCHRL claim against CUNY, and her retaliation claim under Title VII, all of which are dismissed with prejudice. As a reminder to Plaintiff, she may wish to once again consult the New York Legal Assistance Group's legal clinic for pro se litigants, by visiting its website at nylag.org/pro-se-clinic or by calling (212) 659-6190.

This clinic, which is unaffiliated with the Court, assists pro se litigants with federal civil cases.

The Clerk of Court is respectfully directed to terminate the motion pending at docket number 64.

SO ORDERED.

Dated:   March 27, 2023
         New York, New York

_____
Ronnie Abrams
United States District Judge