UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

PRIYA HARRIRAM,

                Plaintiff,

       v.

JOSEPH L. FERA, BRIAN WYNNE, DAWN
EWING-MORGAN, BRIDGET BARBERA,
CITY UNIVERSITY OF NEW YORK, and
LEHMAN COLLEGE,

                Defendants.

No. 21-CV-3696 (RA)

<u>MEMORANDUM
OPINION & ORDER</u>

---

RONNIE ABRAMS, United States District Judge:

       This is one of numerous actions pro se Plaintiff Priya Harriram has filed against the City University of New York ("CUNY") and its employees. Here, Harriram sues Defendants Joseph Fera, Brian Wynne, Dawn Ewing-Morgan, Bridget Barbera, CUNY, and Lehman College, for violations of Title VII, Title IX, the New York State Human Rights Law ("NYSHRL"), and the New York City Human Rights Law ("NYCHRL"). In a March 2023 Memorandum Opinion & Order, the Court granted Defendants' motion to dismiss Harriram's Second Amended Complaint. *See Harriram v. Fera* ("March 2023 Op."), No. 21-CV-3696 (RA), 2023 WL 2647856 (S.D.N.Y. Mar. 27, 2023).[1] Three months later, the Court also dismissed a related lawsuit brought by Harriram on the basis of res judicata because she had already lost a substantially similar case in state court. *Harriram v. Fera* ("*Harriram II*"), No. 22-CV-3356 (RA), 2023 WL 4353824, at *1

---

[1] In the March 2023 Opinion, the Court dismissed Harriram's claims against Lehman College because "Lehman College is a senior college within CUNY and has no separate legal existence." March 2023 Op. at *1 n.1 (quoting *Ross v. State of New York*, 2016 WL 626561, at *3 (S.D.N.Y. Feb. 16, 2016)). Because Harriram offers no additional support as to why her claims against Lehman College should be resuscitated, these claims are again dismissed.

(S.D.N.Y. June 30, 2023).  On April 26, 2023, Harriram filed a Third Amended Complaint.  *See* Dkt. No. 90 ("Third Am. Compl.").  Now before the Court is Defendants' motion to dismiss the Third Amended Complaint.  For the reasons that follow, the motion is granted.

## BACKGROUND[2]

The Court assumes the parties' familiarity with the factual background and procedural history of this action, as detailed in the March 2023 Opinion, and summarizes only the most pertinent facts here.  *See* March 2023 Op. at *1-3.  Harriram is a "West Indian/Caribbean" woman from Trinidad who has spent time at CUNY as both a student and an employee.  *See* Dkt. No. 56 ("Second Am. Compl.") at 1-5.  In her Second Amended Complaint, Harriram previously alleged that she was denied an adjunct lecturer position in the math department at Lehman College in February, March, and April of 2020 due to her race and national origin.  *Id.*  She also asserted that Defendant Fera, a math professor at Lehman, harassed her and retaliated against her when she refused his sexual advances.  *Id.*

In March 2023, the Court granted Defendants' motion to dismiss Harriram's Second Amended Complaint.  It dismissed with prejudice her § 1981 claim against CUNY, her NYCHRL claim against CUNY, and her retaliation claim under Title VII, but it gave Harriram "one more opportunity to amend the Complaint" as to her other claims.  March 2023 Op. at *10.  In explaining the deficiencies that led to the dismissal of those other claims, the Court noted, among other things, that while Harriram's failure to hire claim had identified purportedly less-qualified individuals who were hired for the math adjunct position, she never "identif[ied] when they were hired."  *Id.*

---

[2] The following facts are drawn from Harriram's Third Amended Complaint and the attached exhibits which, on a motion to dismiss, the Court must assume to be true.  *See Lynch v. United States*, 952 F.3d 67, 74-75 (2d Cir. 2020).  In light of Harriram's pro se status, the Court also considers factual allegations made in her prior court filings, including her Second Amended Complaint.  *See Washington v. Westchester County Dep't of Corr.*, 2015 WL 408941, at *1 n.1 (S.D.N.Y. Jan. 30, 2015*); Trombetta v. Novocin*, 414 F. Supp. 3d 625, 628 n.1 (S.D.N.Y. Oct. 2, 2019).

at *4.  Harriram's quid pro quo sexual harassment claim was similarly inadequate because she did "not specify when [Fera's alleged sexual harassment] took place, nor [did] she provide any further factual allegations that could plausibly connect Fera's [harassment] to his decision not to hire her." *Id.*  Harriram's Title VII hostile work environment claim could not proceed because she did "not allege that she was employed at Lehman College" either when she applied for the math adjunct position in 2020 or when Fera's alleged sexual misconduct occurred.  *Id.* at *6.  She further failed to assert conduct "severe or pervasive enough" to meet the hostile work environment standard during the relevant time period.  *Id.* (quoting *Littlejohn v. City of New York*, 795 F.3d 297, 320-21 (2d Cir. 2015)).  Finally, Harriram's NYCHRL retaliation claim against Fera was dismissed because she did not allege "that Fera himself was aware of any of [her] complaints" or that Fera "was involved in the decision to terminate her employment" in 2021.  *Id.* at *9.[3]

Harriram filed her Third Amended Complaint in this action—the now operative complaint—on April 26, 2023.  *See* Third Am. Compl.  Harriram adds three Defendants: CUNY professor Brian Wynne, Title IX investigator Dawn Ewing-Morgan, and Bridget Barbera.[4]  *Id.*  She also asserts several new claims, including claims of discrimination, retaliation, and hostile work environment based on her termination from her position as a College Assistant at Lehman

---

[3] In April 2022, Harriram filed a separate lawsuit against Fera, Ewing-Morgan, Barbera, Lehman College, CUNY, and Eric Washington, bringing Title VII, Title IX, and NYCHRL claims related to her 2021 termination from her position as College Assistant at Lehman College.  In June 2023, the Court granted the defendants' motion to dismiss the complaint.  *Harriram II*, 2023 WL 4353824, at *1.  Harriram's claims were barred by res judicata because she had already litigated—and lost—an Article 78 case in state court concerning that termination against the same defendants.  *Id.*; *see Harriram v. Washington, Barbera, Lehman Coll., City Univ. of N.Y.*, Index No. 212/2022E (N.Y. Sup. Ct. Bronx Cnty. Jan. 18, 2022).

[4] Although Harriram lists Barbera as a defendant in the case caption, the complaint does not mention Barbera or allege any facts about her.  Harriram thus fails to plead "factual content that allows the [C]ourt to draw the reasonable inference that [Barbera] is liable for [any] misconduct alleged."  Any claims against her must thus be dismissed.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

College in 2021, as well as state law claims under the NYSHRL. *Id.*; *see* Dkt. No. 102 ("Def. Br.") at 1-2.

In the Third Amended Complaint, Harriram alleges that she was a student at Lehman College from 2013 through 2018, and that she became a part-time employee there in the fall of 2016. Third Am. Compl. at 11. According to Harriram, in 2013 she was "forced to perform oral sex multiple[] times against [her] will after class with [Defendant] Fera." *Id.* Fera would also allegedly "stare at [her] breasts and fondle [her] hands" around 2016. *Id.* When Harriram later applied for a position with the math department in February 2020, and handed Fera her resume, Fera purportedly "started telling [her] to go somewhere else[.]" *Id.* Harriram also claims that another professor, Defendant Brian Wynne, forced her to write on a notepad that was positioned "on his crotch" during his office hours in 2017, which made her "extremely uncomfortable" and feel "very violated." *Id.* at 12. In October 2021, while Harriram maintained a "very small role as a Part-Time worker" at Lehman College, she "decided to let the College know about the sexual harassment." *Id.* She asserts that Defendant Dawn Ewing-Morgan, a Title IX investigator, "coerced" her into having a meeting about the sexual harassment and authored "an unfounded investigative report," which was "a lie." *Id.* As a result, Harriram alleges that she was terminated in November 2021 and, in particular, that Defendant Fera "got [her] fired from her job." *Id.*

## LEGAL STANDARD

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).[5] "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable

---

[5] Unless otherwise indicated, case quotations omit all internal citations, quotations, footnotes, omissions, and alterations.

for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).   To make that determination, the Court must "accept as true all factual allegations … but [is] not required to credit conclusory allegations or legal conclusions couched as factual … allegations." *Dane v. UnitedHealthcare Ins. Co.*, 974 F.3d 183, 189 (2d Cir. 2020).   Courts must "liberally construe pleadings and briefs submitted by pro se litigants, reading such submissions to raise the strongest arguments they suggest." *McLeod v. Jewish Guild for the Blind*, 864 F.3d 154, 156 (2d Cir. 2017). But even pro se litigants must "state a claim to relief that is plausible on its face." *Mancuso v. Hynes*, 379 F. App'x 60, 61 (2d Cir. 2010).

"In adjudicating a Rule 12(b)(6) motion, a district court must confine its consideration to facts stated on the face of the complaint, in documents appended to the complaint or incorporated in the complaint by reference, and to matters of which judicial notice may be taken." *Leonard F. v. Israel Disc. Bank of New York*, 199 F.3d 99, 107 (2d Cir. 1999).   Courts may, for example, consider matters of public record, including state court documents and decisions. *Quire v. City of New York*, 2021 WL 293819, at *3 (S.D.N.Y. Jan. 28, 2021); *see Giraldo v. Kessler*, 694 F.3d 161, 164 (2d Cir. 2012); *Williams v. N.Y.C. Hous. Auth.*, 816 F. App'x 532, 534 (2d Cir. 2020) (on a motion to dismiss, "[t]he district court did not err in considering [plaintiff's] Article 78 petition and state court decision because they were public records, and thus appropriate for judicial notice.").

"A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000).   "A plaintiff asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that it exists." *Id.*

**DISCUSSION**

I.      **2021 Termination Claims**

Defendants argue that Harriram's claims about her fall 2021 termination be dismissed due to the doctrine of res judicata.  The Court agrees.

"Under the doctrine of res judicata, a final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action."  *New York v. Mountain Tobacco Co.*, 942 F.3d 536, 543 (2d Cir. 2019).  "A federal court must give to a state-court judgment the same preclusive effect as would be given that judgment under the law of the State in which the judgment was rendered," which here is New York.  *Id.*  A party seeking to raise a res judicata defense "must show that (1) the previous action involved an adjudication on the merits; (2) the previous action involved the plaintiffs or those in privity with them; and (3) the claims asserted in the subsequent action were, or could have been, raised in the prior action."  *TechnoMarine SA v. Giftports, Inc.*, 758 F.3d 493, 499 (2d Cir. 2014).  Under New York's "transactional approach" to res judicata, a "later claim arising out of the same factual grouping as an earlier litigated claim" is precluded "even if the later claim is based on different legal theories or seeks dissimilar or additional relief."  *Mountain Tobacco Co.*, 942 F.3d at 543.

In *Harriram II*, this Court dismissed substantially similar claims concerning Harriram's 2021 termination.  2023 WL 4353824, at *2.  There, the Court explained that the "elements of res judicata [were] easily satisfied" because "[t]he Bronx Supreme Court [previously] adjudicated Plaintiff's Article 78 petition on the merits, resulting in the dismissal of her case, and the same parties [were] involved in both actions."  *Id.*  Here, Harriram's claims once again "arise from precisely the same facts as her Article 78 proceeding, namely, the sexual abuse allegedly perpetrated by Professor Fera and Professor Wynne, the reports she submitted to CUNY …, her

subsequent meetings with Ewing-Morgan … and her [2021] termination." *Id.* For the reasons described in *Harriram II*, all claims arising out of Harriram's 2021 termination are thus dismissed.[6]

## II.   2020 Employment Application Claims

Harriram also re-asserts claims of retaliation, discrimination, and hostile work environment related to her application for a math department position at Lehman College in 2020. Third Am. Compl. at 11. Defendants argue that "despite the fact that [Harriram] enjoyed four opportunities to attempt to plead her claims, she still fails to state a cause of action" because, among other deficiencies, "her allegations are still devoid of facts sufficient to raise any inference of discriminatory animus." Def. Br. at 2-3.[7] The Court agrees.

### A.  Title VII Retaliation Claim Against CUNY

For a retaliation claim to survive a motion to dismiss, "the plaintiff must plausibly allege that: (1) defendants discriminated—or took an adverse employment action—against [her], (2) because [she] has opposed any unlawful employment practice." *Duplan v. City of New York*, 888 F.3d 612, 625 (2d Cir. 2018). In its March 2023 Opinion, the Court dismissed Harriram's Title VII retaliation claim for failure to exhaust administrative remedies. March 2023 Op. at *6. Because the Court has not been presented with any reason to revisit this determination, the Title VII retaliation claim is again dismissed.

---

[6] To the extent that Harriram intends to bring claims against Ewing-Morgan outside the context of her 2021 termination, such claims are also dismissed due to her failure to plead facts that plausibly state a claim. *See Twombly*, 550 U.S. at 570. All claims against Defendant Ewing-Morgan are therefore dismissed.

[7] Defendants also argue that Harriram's opposition brief "fails to address any of Defendants' arguments" and the Court should dismiss the Third Amended Complaint "in its entirety" because Harriram "has abandoned her claims." Dkt. No. 108 ("Def. Reply Br.") at 1. The Court declines to do so on this basis. A pro se plaintiff should not be presumed to have abandoned her claims because she did not address a defendant's specific arguments. *See Tsismentzoglou v. Milos Estiatorio Inc.*, 2019 WL 2287902, at *2 n.3 (S.D.N.Y. May 29, 2019). "Implicit in the right to self-representation is an obligation on the part of the court to make reasonable allowances to protect pro se litigants from inadvertent forfeiture of important rights because of their lack of legal training." *Traguth v. Zuck*, 710 F.2d 90, 95 (2d Cir. 1983).

### B. Title VII Discrimination Claims Against CUNY

#### 1. Race-based Discrimination

Although Harriram brought claims of discrimination based on race and national origin in her Second Amended Complaint, she no longer appears to do so.[8]  To the extent she still wishes to pursue them, they must again be dismissed.  In its March 2023 Opinion, the Court dismissed Harriram's Title VII discrimination claim because she failed to plead "any facts that plausibly give rise to an inference of discrimination."  March 2023 Op. at *5.  The Court similarly rejected her 42 U.S.C. § 1981 discrimination claims for two reasons.  First, her § 1981 claims against CUNY and Defendant Fera in his official capacity were barred by sovereign immunity.  *Id.* at *7.  Second, her § 1981 claims against Fera in his individual capacity failed to state a claim for employment discrimination.  *Id.*  For the same reasons as before, the Court again dismisses these claims.

#### 2. Sex-based Discrimination

Harriram also asserts that Defendants discriminated against her based on sex, under two discernible theories: failure to hire and quid pro quo sexual harassment.

"To plead a failure to hire claim under Title VII … the plaintiff must demonstrate that: (1) [she] is a member of a protected class; (2) [she] applied and was qualified for a job for which the employer was seeking applicants; (3) [she] was rejected despite being qualified; and (4) after this rejection, the position remained open and the employer continued to seek applicants with [her] qualifications."  *Harris v. Oscar De La Renta, LLC*, 2022 WL 16963480, at *4 (S.D.N.Y. Nov. 16, 2022).  In its March 2023 Opinion, the Court dismissed this claim because Harriram made no allegation that the math department position remained open after she was rejected.  March 2023 Op. at *4.  Harriram now again fails to allege that the position remained open after her rejection

---

[8] Indeed, the Third Amended Complaint does not make any reference to her West Indian/Caribbean or Trinidadian background.

or that Defendants continued to seek applicants with Harriram's qualifications.  Her discrimination

claim under a failure to hire theory is therefore dismissed for the same reasons as before.  *See*

*Quarless v. Bronx Lebanon Hosp. Ctr.*, 75 F. App'x 846, 848 (2d Cir. 2003).

"To state a quid pro quo claim, [the plaintiff] must show a 'tangible employment action,'

i.e., that an 'explicit alteration in the terms or conditions of employment' resulted from her refusal

to submit to [the defendant's] sexual advances."  *Schiano v. Quality Payroll Sys., Inc.*, 445 F.3d

597, 603 (2d Cir. 2006).  To raise an inference of discrimination, a quid pro quo harassment claim

must establish a "causal connection" between the rejection of sexual advances and the employment

action.  *Cook v. N.Y.C. Dep't of Educ.*, 90 F. App'x 562, 563 (2d Cir. 2004).  A "close temporal

proximity" between the two events "constitute[s] evidence of a causal connection."  *Papelino v.*

*Albany Coll. of Pharmacy of Union Univ.*, 633 F.3d 81, 90 (2d Cir. 2011).

Here, Harriram alleges that she was forced by Fera to perform sexual acts "multiple times"

in 2013 and that Fera would stare at her breasts and fondle her hands around 2016.  Third Am.

Compl. at 11.  Harriram asserts that she rejected these advances in 2013 but that they continued

through 2016.  *Id.*  She further alleges that, four years later, in 2020, Fera refused to hire her.  *Id.*

Although Harriram's allegations of sexual misconduct are undoubtedly serious, she fails to

plausibly plead a causal connection between her rejection of the alleged sexual misconduct and

any tangible employment action.

Harriram has not alleged that Fera's sexual advances were "sufficiently close in time to

any significant adverse employment action to establish a causal connection" between the two.

*Cook*, 90 F. App'x at 563.  Indeed, even "[o]ne year is simply too long to find temporal proximity

in a *quid pro quo* [sexual harassment] case, especially where there are no allegations of any

negative intervening interactions."  *See Figueroa v. Johnson*, 109 F. Supp. 3d 532, 554 (E.D.N.Y.

2015), *aff'd*, 648 F. App'x 130 (2d Cir. 2016); *Adeniji v. Admin. for Child. Servs., NYC*, 43 F.

Supp. 2d 407, 433 (S.D.N.Y. 1999), *aff'd*, 201 F.3d 430 (2d Cir. 1999) (holding that the court

could not infer causation where eleven months passed "between [a plaintiff's] alleged rejection of

[a defendant's sexual advances] and his suspension and termination").  Therefore, like the Court

held in its March 2023 Opinion, it cannot infer causation because, between 2016 and 2020, over

four years passed without any alleged interactions between Harriram and Fera.[9] *See* March 2023

Op. at *4-5.  Harriram's Title VII discrimination claim is therefore dismissed.  *See Lekettey v. City*

*of New York*, 637 F. App'x 659, 661 (2d Cir. 2016); *Littlejohn,* 795 F.3d at 311.[10]

### C.  Title VII Hostile Work Environment Claim Against CUNY

"To establish a hostile work environment under Title VII, … a plaintiff must show that 'the

workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently

severe or pervasive to alter the conditions of the victim's employment and create an abusive

working environment.'"  *Littlejohn*, 795 F.3d at 320-21 (quoting *Harris v. Forklift Sys., Inc.*, 510

U.S. 17, 21 (1993)).  "A hostile work environment 'is actionable … only when it occurs because

of an employee's sex, or other protected characteristic."  *Bliss v. MXK Rest. Corp.*, 220 F. Supp.

3d 419, 423 (S.D.N.Y. 2016).

A plaintiff alleging a hostile work environment based on sexual harassment must also

demonstrate "a sufficient basis for imputing the conduct that created the hostile environment to

---

[9] Like in her Second Amended Complaint, Harriram has also failed "to plausibly plead a causal connection" because she has not asserted any non-conclusory facts that could offer a "direct link" to Fera's "decision not to hire her."  March 2023 Op. at *4-5.  Harriram's Third Amended Complaint provides no additional allegations that alter the Court's previous analysis.

[10] To the extent Harriram seeks to allege a Title IX claim against Fera, this claim is also dismissed for the reasons stated in the March 2023 Opinion.  *See* March 2023 Op. at *7-9.  *See also Papelino*, 633 F.3d at 89 ("[A] Title IX sex discrimination claim requires the same kind of proof required in a Title VII sex discrimination claim.").

her employer." *Ferris v. Delta Air Lines, Inc.*, 277 F.3d 128, 136 (2d Cir. 2001). "Where the harassment was done by a co-employee without supervisory authority over the plaintiff, liability will be imputed to the employer only if it is negligent, that is, if it either provided no reasonable avenue for complaint or knew of the harassment but did nothing about it." *Id.* The "appropriateness of an employer's remedial action must be assessed from the totality of the circumstances." *Turley v. ISG Lackawanna, Inc.*, 774 F.3d 140, 153 (2d Cir. 2014); *see Distasio v. Perkin Elmer Corp.*, 157 F.3d 55, 65 (2d Cir. 1998) (noting that whether an employer's "response was reasonable has to be assessed from the totality of circumstances"). Thus, whether a particular response is reasonable "will vary from case to case." *Torres v. Pisano*, 116 F.3d 625, 639 (2d Cir. 1997); *see Murray v. New York Univ. Coll. of Dentistry*, 57 F.3d 243, 249 (2d Cir. 1995).

In its March 2023 Opinion, the Court dismissed Harriram's hostile work environment claim against CUNY because she failed to assert that she was employed by CUNY during the relevant time period; she did not allege conduct "severe or pervasive enough" to meet the hostile work environment standard during the relevant period; and she failed to plausibly assert that any such conduct was "because of" a protected characteristic. March 2023 Op. at *6. Although the Third Amended Complaint now states that Harriram was employed part-time by CUNY from 2016 through 2021, her hostile work environment claim still fails.

In particular, Harriram fails to establish a sufficient basis for imputing Fera's alleged conduct to her employer. *Ferris*, 277 F.3d at 136. Harriram does not assert that Fera had "supervisory authority" over her when she worked for CUNY as a College Assistant. *Id.* Nor does she aver that her employer "provided no reasonable avenue for complaint" about the alleged harassment or otherwise "did nothing about it." *Id.* To the contrary, Harriram herself asserts that

11

"around October 2021 [she] decided to let the College know about the sexual harassment," that CUNY's Title IX coordinator met with her to discuss the allegations, and that the coordinator issued an investigative report later that year.[11] Although Harriram disagrees with its findings, *see* Third Am. Compl. at 12, a plaintiff "does not have the right to choose an employer's remedial action," *Paul v. Postgraduate Ctr. for Mental Health*, 97 F. Supp. 3d 141, 176 (E.D.N.Y. 2015). CUNY also took other remedial steps to address the alleged harassment. For instance, CUNY "set forth several no contact orders" and took other measures to separate Harriram from Fera. *See* Third Am. Compl. at 13.[12] Considering the totality of circumstances, Harriram has not plausibly alleged "that a specific basis exists for imputing the conduct that created the [alleged] hostile environment to the employer." *Perry v. Ethan Allen, Inc.*, 115 F.3d 143, 149 (2d Cir. 1997). Her Title VII hostile work environment claim must thus be dismissed.

### D. NYCHRL and NYSHRL Claims Against CUNY and Defendant Fera

Harriram also asserts several claims under the New York State Human Rights Law ("NYSHRL") and the New York City Human Rights Law ("NYCHRL"), appearing to allege retaliation, discrimination, and hostile workplace claims against CUNY and Fera.

---

[11] The investigative report concluded that Harriram's account of sexual misconduct was a "work of fiction." *See Harriram v. Washington, Barbera, Lehman Coll., City Univ. of N.Y.*, Index No. 212/2022E (N.Y. Sup. Ct. Bronx Cnty. Jan. 18, 2022) at 5. The state court that considered and denied Harriram's Article 78 petition also noted that Lehman College "thoroughly investigated" Harriram's claims, including by hiring a forensic linguistics expert, interviewing witnesses identified by Harriram, and speaking with Harriram in the presence of a community representative. *Id.* at 6. The Court takes judicial notice of this document, "not for the truth of the matters asserted … but rather to establish the fact of such litigation and related filings." *Kramer v. Time Warner Inc.*, 937 F.2d 767, 774 (2d Cir. 1991).

[12] Indeed, New York public schools often employ no contact orders in cases involving allegations of sexual misconduct or discrimination, and they primarily serve a safety function. *See Doherty v. Bice*, 2020 WL 5548790, at *2 (S.D.N.Y. Sept. 16, 2020). In a typical order, "if the accused and complainant observe each other in a public place, it is the responsibility of the accused to leave the area immediately and without directly contacting the complainant." *Id.* (quoting SUNY Purchase's no contact policy).

### 1. NYCHRL and NYSHRL Claims Against CUNY

In its March 2023 Opinion, the Court dismissed Harriram's NYCHRL claims against CUNY because such claims were barred by sovereign immunity.  March 2023 Op. at *8.  Harriram has since provided no justification to revisit this determination, so these claims are again dismissed.

In the Third Amended Complaint, Harriram brings additional NYSHRL claims against CUNY.  But CUNY is considered an "arm of the state," which means that "suits against CUNY are equivalent to suits against the State of New York and are therefore barred by the Eleventh Amendment" where applicable.  *Clissuras v. City Univ. of N.Y.*, 359 F.3d 79, 83 (2d Cir. 2004). Because New York State has not consented to suit under NYSHRL in federal court, *see Purdie v. City Univ. of New York*, 2015 WL 129552, at *4 (S.D.N.Y. Jan. 8, 2015), the Court dismisses these claims against CUNY.

### 2. NYCHRL and NYSHRL Claims Against Fera in his Official Capacity

In its March 2023 Opinion, the Court also dismissed Harriram's NYCHRL claims against Fera in his official capacity because they were barred by sovereign immunity.  March 2023 Op. at *8.  For the same reasons, these claims are again dismissed.

In the Third Amended Complaint, Harriram appears to bring additional NYSHRL claims against Fera.  Because sovereign immunity "extends to state employees acting in their official capacities," *Edwards v. N.Y. State Off. of Mental Health*, 2017 WL 666227, at *9 (E.D.N.Y. Feb. 20, 2017), these claims are dismissed to the extent they are brought against Fera in his official capacity.

### 3.   NYCHRL and NYSHRL Claims Against Fera in his Individual Capacity

Sovereign immunity does not protect state officials who are sued in their individual capacities.  *Chinn v. City Univ. of N.Y. Sch. of L. at Queens Coll.*, 963 F. Supp. 218, 225 (E.D.N.Y. 1997).  The Court nevertheless dismisses Harriram's remaining NYCHRL and NYSHRL claims against Defendant Fera in his individual capacity.

#### a.   NYCHRL and NYSHRL Retaliation Claims Against Fera in his Individual Capacity

The Court previously dismissed Harriram's NYCHRL retaliation claim against Fera in his individual capacity because she did "not plausibly allege that Fera was involved in the alleged retaliation she experienced after her reports of sexual misconduct."  March 2023 Op. at *9.  It now appears that Harriram has withdrawn any NYCHRL retaliation claim against Fera.  To the extent she still wishes to pursue it, the claim must be dismissed for the same reasons as before.  Because Harriram does not allege that Fera retaliated against her for participating in protected activity, Harriram fails to state a claim.  *See Soloviev v. Goldstein*, 104 F. Supp. 3d 232, 253 (E.D.N.Y. 2015).

Harriram's NYSHRL retaliation claim against Defendant Fera in his individual capacity must also be dismissed because "the same standards govern retaliation claims" under Title VII and NYSHRL.  *Farmer v. Shake Shack Enters., LLC*, 473 F. Supp. 3d 309, 330 (S.D.N.Y. 2020).  Since Harriram does not plausibly allege "a causal connection between [a] protected activity and [any] adverse employment action [taken by Fera]" *id.*, she also fails to state a claim under NYSHRL. *See* March 2023 Op. at *9.

### b. NYCHRL and NYSHRL Discrimination Claims Against Fera in his Individual Capacity

The Court also previously dismissed Harriram's NYCHRL discrimination claim against Fera in his individual capacity. *See* March 2023 Op. *8. Although the pleading standard under the NYCHRL is more liberal than Title VII, Harriram failed to state a claim under either statute. *Id.* (citing *White v. Bridge Inc.*, 2019 WL 4805896, at *5 (S.D.N.Y. Sept. 30, 2019)). In rejecting her failure to hire and quid pro quo sexual harassment theories, the Court found that Harriram did not plausibly "allege facts giving rise to an inference of discrimination." *Id.* (quoting *Moore v. Verizon*, 2016 WL 825001, at *8 (S.D.N.Y. Feb. 5, 2016)). For the same reasons, the Court now dismisses her NYCHRL discrimination claim against Fera. *See Bermudez v. City of New York*, 783 F. Supp. 2d 560, 577 (S.D.N.Y. 2011).[13]

Claims of discrimination under NYSHRL are analyzed under the same framework as those under Title VII. *Kirkland-Hudson v. Mount Vernon City Sch. Dist.*, 665 F. Supp. 3d 412, 449 (S.D.N.Y. 2023) (citing *Walsh v. N.Y.C. Hous. Auth.*, 828 F.3d 70, 74-75 (2d Cir. 2016)). Therefore, for the reasons discussed above in the Court's Title VII analysis, Harriram's NYSHRL discrimination claim is also dismissed.

### c. NYSHRL Hostile Work Environment Claim Against Fera in his Individual Capacity

Finally, because "[s]exual harassment claims brought under a hostile work environment theory under the NYSHRL are judged by the same standard as their federal counterparts in Title

---

[13] To the extent Harriram seeks to assert a NYCHRL claim against Fera based on a hostile work environment theory, this claim is also dismissed. "NYCHRL does not differentiate between discrimination and hostile work environment claims, which means that this Court should perform the same analysis on Plaintiff's hostile work environment claim as it does on [her] discrimination claim." *Konteye v. New York City Dep't of Educ.*, 2019 WL 3229068, at *7 (S.D.N.Y. July 18, 2019); *see Sotomayor v. City of New York*, 862 F. Supp. 2d 226, 261 (E.D.N.Y. 2012), *aff'd*, 713 F.3d 163 (2d Cir. 2013). Accordingly, this claim is also dismissed for the reasons stated in the March 2023 Opinion. *See* March 2023 Op. *8.

VII," *McHenry v. Fox News Network, LLC*, 510 F. Supp. 3d 51, 65 (S.D.N.Y. 2020), Harriram's remaining NYSHRL claim is dismissed for the reasons discussed in the Court's analysis of her Title VII claim.

All of Harriram's NYCHRL and NYSHRL claims against CUNY and Fera are therefore dismissed.

### III.    2017 Incident Involving Defendant Wynne

In the Third Amended Complaint, Harriram alleges that a different CUNY math professor, Defendant Brian Wynne, made her "extremely uncomfortable" and feel "very violated" when he forced her to write on a notepad that was positioned "on his crotch" in 2017.  Third Am. Compl. at 11-12.  She also alleges that, in 2017, Wynne would touch her inappropriately and look at her cleavage.  *Id.*  Harriram appears to assert Title VII, Title IX, NYCHRL, and NYSHRL claims against Wynne.  Defendants argue that Harriram's claims against Wynne must be dismissed as untimely and due to her failure to exhaust administrative remedies. Def. Br. at 23-25.  The Court agrees.

#### A.  Title VII Claims

The Court dismisses Harriram's Title VII claims about Defendant Wynne for failure to exhaust administrative remedies.  "As a precondition to filing a Title VII claim in federal court, a plaintiff must first pursue available administrative remedies and file a timely complaint with the EEOC." *Hardaway v. Hartford Pub. Works Dep't*, 879 F.3d 486, 489 (2d Cir. 2018); *see* 42 U.S.C. § 2000e–5(e).  As an initial matter, the Court rejects Defendants' argument that the Court lacks jurisdiction to consider Harriram's claims concerning Wynne.  To the contrary, Title VII's charge-filing requirement is "not jurisdictional" but rather a procedural "claim-processing rule." *Fort Bend Cnty. v. Davis*, 139 S. Ct. 1843, 1846-851 (2019) ("Title VII's charge-filing requirement is

a processing rule, albeit a mandatory one, not a jurisdictional prescription delineating the adjudicatory authority of courts.").

Harriram's claims, however, must still be dismissed. Harriram's previous EEOC charge of discrimination contains no allegations about Wynne, and Harriram does not allege that she filed another EEOC complaint about Wynne's conduct. Further, her claims against Wynne are not "reasonably related" to her EEOC charge because they concern a different defendant, and Harriram has never alleged that Wynne played any role in Defendant Fera's decision to deny her employment application. *See Stewart v. U.S. I.N.S.*, 762 F.2d 193, 198 (2d Cir. 1985). Because the allegations about Wynne could not "reasonably [have been] expected to grow out of the [prior] charge of discrimination," *Smith v. Am. President Lines, Ltd.*, 571 F.2d 102, 107 n.10 (2d Cir. 1978), her claims are dismissed. *See Felton v. Monroe Cmty. Coll.*, 579 F. Supp. 3d 400, 414 (W.D.N.Y. 2022).

### B. Title IX Claims

To the extent Harriram seeks to assert a Title IX claim based on alleged sexual harassment by Defendant Wynne, this claim is untimely. Title IX has been recognized as "encompassing teacher-on-student hostile educational environment sexual harassment." *Hayut v. State Univ. of N.Y.*, 352 F.3d 733, 750 (2d Cir. 2003). "When a teacher sexually harasses a student, that teacher 'discriminates on the basis of sex' in violation of Title IX." *Kracunas v. Iona Coll.*, 119 F.3d 80, 86 (2d Cir. 1997). To succeed, a "Title IX plaintiff must show that [she] subjectively perceived the environment to be hostile or abusive and that the environment objectively … was permeated with discriminatory intimidation, ridicule, and insult sufficiently severe or pervasive to alter the conditions of [her] educational environment." *Papelino*, 633 F.3d at 89.

In New York, a three-year statute of limitations applies to this claim.  *See id.*; *Curto v. Edmundson*, 392 F.3d 502, 504 (2d Cir. 2004).  Harriram alleges that Wynne harassed her in the fall of 2017 and that she waited until 2021 to "let the College know about the sexual harassment." Third Am. Compl. at 11-12.  Because Harriram does not claim that any harassment occurred after 2017, her Title IX claim must be dismissed.  Even assuming that Wynne's alleged harassment occurred through December 31, 2017, Harriram's Title IX claim against Wynne would have expired on August 15, 2021.[14]  But Harriram waited until July 14, 2023 to raise any allegations against Wynne in this action.  *See* Third Am. Compl. at 12.  Her claim is thus dismissed as untimely.[15]

## C.  NYCHRL and NYSHRL Claims

Finally, to the extent Harriram seeks to bring a NYCHRL or NYSHRL claim against Defendant Wynne in his personal capacity, these claims are also barred by New York's three-year statute of limitations.  *See Russo v. N.Y. Presbyterian Hosp.*, 972 F. Supp. 2d 429, 445 (E.D.N.Y. 2013).  Although this statute of limitations "is tolled for the period between the filing of an EEOC charge and the issuance by the EEOC of a right-to-sue letter," *DeNigris v. N.Y.C. Health & Hosps. Corp.*, 861 F. Supp. 2d 185, 192 (S.D.N.Y.2012), Harriram does not allege that she brought an EEOC charge concerning Wynne's conduct.  And, even if the Court were to toll the period between

---

[14] This calculation incorporates a State executive order that tolled the applicable period for 228 days, from March 20, 2020 through November 3, 2020.  *See Bell v. Saunders*, 2022 WL 2064872, at *4 (N.D.N.Y. June 8, 2022).

[15] Harriram maintains that her claims are not time-barred due to the "continuing violation doctrine."  *See* Dkt. No. 110 ("Pl. Sur-Reply Br.") at 2.  The Court disagrees.  "[U]nder the continuing violation doctrine, a plaintiff may bring claims for discriminatory acts that would have been barred by the statute of limitations" when, for instance, a discriminatory act "was part of a continuing course of conduct that began with [that defendant's] earlier sexual advances."  *Papelino*, 633 F.3d at 91.  But no "continuing" conduct is alleged here, where Harriram asserts a sole, discrete act by Defendant Wynne.  Indeed, Harriram does not state that Wynne ever interacted with her before or after the fall of 2017.  Nor does she point to a single act by Wynne that took place within the statute of limitations.  The continuing violation doctrine is therefore inapplicable.  *See Fitzgerald v. Henderson*, 251 F.3d 345, 359 (2d Cir. 2001).

Harriram's November 2020 EEOC charge and the EEOC's March 2021 right-to-sue letter, her claims would still be untimely.

## CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss is granted in full.  The Court has now given Harriram three opportunities to amend her pleadings, including "one more opportunity to amend the Complaint" after the Court's March 2023 Opinion.  March 2023 Op. at *10.  Due to Harriram's "failure to cure deficiencies by amendments previously allowed," *Foman v. Davis*, 371 U.S. 178, 182 (1962), her claims are dismissed with prejudice.  *See Metzler Inv. Gmbh v. Chipotle Mexican Grill, Inc.*, 970 F.3d 133, 147 (2d Cir. 2020).  The Clerk of Court is respectfully directed to terminate the motion pending at Dkt. No. 101 and close this case.

Dated:     March 8, 2024
           New York, New York

_____
Hon. Ronnie Abrams
United States District Judge

19